**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CRUCIBLE MATERIALS CORP., et al. | ) | Case No. 09-11582 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| RONALD S. GELLERT, as Successor | ) | |
| Litigation Trustee of the Crucible | ) | |
| Materials Corporation Creditor's | ) | |
| Litigation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-53884 (MFW) |
| | ) | |
| COLTEC INDUSTRIES, INC. f/k/a | ) | |
| COLT INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION[1]**

Before the Court is the Motion of Coltec Industries, Inc. ("Coltec") to Dismiss the Trustee's Complaint, in part, for failure to state a claim for relief. For the reasons set forth below, the Court will grant, in part, the Motion to Dismiss.

I.    BACKGROUND

On September 15, 1980, the Onondaga Industrial Development

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure. Accordingly, the Court herein makes no findings of fact or conclusions of law. Instead, the facts recited are as averred in the Complaint, which must be presumed as true for the purposes of this Motion to Dismiss. See Ascroft v. Iqbal, 556 U.S. 662, 678 (2009).

Agency ("Onondaga") issued Pollution Control Revenue Bonds Series 1980 (the "Bonds") in the amount of $2,575,000, to acquire, construct, improve and equip pollution control facilities in Onondaga County, New York (the "Project"). (Adv. D.I. 10 at Ex. 1.)[2] On the same day, Onondaga leased the Project pursuant to a financing lease agreement (the "Financing Lease") to Colt Industries, Inc. ("Colt"), the corporate predecessor of Coltec. (Adv. D.I. 10 at Ex. 2.)  The Financing Lease required Colt to pay the periodic interest on the Bonds until the bonds were redeemed and to purchase the Project from Onondaga for one dollar plus the full principal amount of the Bonds on or before October 1, 2010. (Id.)

Crucible Materials Corporation ("Crucible") was incorporated in 1983 as a wholly-owned subsidiary of Colt Industries Operating Corp. ("CIOC").  Colt owned all of the outstanding stock of CIOC. On November 5, 1985, CMC Holding Company, Inc. ("CMC Holding") and the Employee Stock Ownership Plan of Crucible ("ESOP"), bought all the stock of Crucible from COIC pursuant to a purchase agreement (the "1985 Purchase Agreement").  CMC Holding and Crucible then merged, with Crucible as the surviving company. Pursuant to that transaction, Crucible agreed to assume all of Colt's obligations on the Bonds.  Shortly thereafter, Crucible

---

[2]  Citations to pleadings in the bankruptcy case are "D.I. #" and to pleadings in the adversary proceeding are "Adv. D.I. #."

agreed to assume the Financing Lease and to be directly obligated to Onondaga to repay the Bonds (the "Assignment").  (Adv. D.I. 10 at Ex. 3.)  Although Crucible assumed the Financing Lease, Colt also remained obligated to Onondaga for repayment of the Bonds. (Id.)

The 1985 Purchase Agreement also required Coltec to indemnify Crucible for certain costs and damages for sites and locations listed on Schedule K that violated the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA").  On December 9, 1988, Crucible gave notice to Coltec that it would seek indemnification for environmental costs under the 1985 Purchase Agreement.  On June 6, 1996, Coltec and Crucible entered into a Stipulation and Agreement in which Coltec acknowledged its indemnification obligations to Crucible for the environmental costs related to the Schedule K sites.

Crucible operated the Project and made the payments on the Bonds through April 1, 2009.  On May 6, 2009, Crucible and its wholly owned subsidiary, Crucible Development Corporation (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On September 25, 2009, the Court entered an Order authorizing the sale of certain of the Debtors' assets which included the sale of the Project to Crucible Industries, LLC (the "Purchaser") for a purchase price of $8,000,000 (the "Sale Order").  (D.I. 438.)  The Sale Order also directed

Crucible to pay Onondaga $2,723,331 of the purchase price in full satisfaction of the Bonds.  (Id.)  The sale closed on October 21, 2009, and Crucible paid off the Bonds.

During Crucible's bankruptcy case, the Environmental Protection Agency ("EPA"), the New York State Department of Environmental Conservation ("NYSDEC") and Honeywell International, Inc. ("Honeywell") filed proofs of claim against Crucible seeking payment for environmental response costs incurred in connection with sites listed on Schedule K in the 1985 Purchase Agreement.  Crucible settled the NYSDEC claims for allowance of a $970,000 general unsecured claim, which was approved by the Court on July 26, 2010.  (D.I. 1075.)  Crucible also settled the amount of the EPA and Honeywell claims for approximately $21 million, which was approved by the Court on February 25, 2011.  (D.I. 1554.)

On August 26, 2010, the Court entered an Order confirming the Debtors' Second Amended Plan of Liquidation (the "Plan"). (D.I. 1139.)  The Plan established a Litigation Trust to which the Debtors transferred all of their remaining assets, including causes of action.  (D.I. 1097.)  On April 18, 2011, the Litigation Trust Advisory Committee selected Ronald S. Gellert as the Successor Litigation Trustee (the "Trustee").  (D.I. 1583.)

On November 30, 2011, the Trustee filed a Complaint seeking (1) indemnification from Coltec for environmental costs under the

4

1985 Purchase Agreement ("Count I"); (2) judgment against Coltec
for contribution for the Debtors' CERCLA liability ("Count II");
(3) to avoid and recover certain transfers associated with the
Bond payments pursuant to sections 547, 548, 549, and 550 of the
Bankruptcy Code ("Counts III through VI"); and (4) to disallow
any claims held by Coltec in accordance with section 502 ("Count
VII").

On February 6, 2012, Coltec filed the Motion to Dismiss the
Trustee's avoidance claims and the claim for contribution under
section 107 of CERCLA for failure to state a cognizable claim
under Rule 12(b)(6) and Rule 9(b).  Fed. R. Civ. P. 12(b)(6) &
9(b); Fed. R. Bankr. P. 7012 & 7009.  (Adv. D.I. 8.)  The Trustee
opposes the Motion.  The matter has been fully briefed and is
ripe for decision.


II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this
adversary proceeding.  28 U.S.C. §§ 1334(b) & 157(b)(1).  Many of
the counts are core matters.  28 U.S.C. § 157(b)(2)(A), (B), (E),
(H), (K), & (O).  The Court has the power to enter an order on a
motion to dismiss even if the matter is non-core.  <u>See, e.g.</u>, <u>In
re Trinsum Grp., Inc.</u>, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012)
("After <u>Stern v. Marshall</u>, the ability of bankruptcy judges to
enter interlocutory orders in proceedings . . . has been

5

reaffirmed . . . ."); <u>Boyd v. King Par, LLC</u>, Case No. 11-CV-1106, 2011 WL 5509873, at *5 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").


III.  <u>DISCUSSION</u>

   A.   <u>Standard of Review</u>

   For the Trustee to survive a Rule 12(b)(6) motion, his claims must meet the standards of pleading.  The Supreme Court's decisions in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) have shifted federal pleading standards from notice pleading to a heightened standard of pleading.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This heightened pleading requirement applies to all civil suits in federal courts.  <u>Id</u>.

   To survive a motion to dismiss under the new pleading standard, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 556 U.S. at 678.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>.  "[A] pleading offering

only labels and conclusions or a formulaic recitation of the
elements of a cause of action will not do." Fowler, 578 F.3d at
210. "Courts have an obligation in matters before them to view
the complaint as a whole and to base rulings not upon the
presence of mere words but, rather, upon the presence of a
factual situation which is or is not justiciable." Doug Grant,
Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir.
2000). A court must "draw on the allegations of the complaint,
but in a realistic, rather than a slavish, manner." Id.

Determining whether a complaint is "facially plausible" is
"a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense." Iqbal, 556
U.S. at 679. However, "where the well-pleaded facts do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged — but it has not shown —
that the pleader is entitled to relief." Id.

The Third Circuit has instructed courts to conduct a two-
part analysis. Fowler, 578 F.3d at 210. "First the factual and
legal elements of a claim should be separated," with the
reviewing court accepting "all of the complaint's well-pleaded
facts as true, but . . . disregard[ing] any legal conclusions."
Id. at 210–11. Next, the reviewing court must "determine whether
the facts alleged in the complaint are sufficient to show that
the plaintiff has a plausible claim for relief." Id.

7

B.    Avoidance Claims

In the Complaint, the Trustee asserts that he is entitled to avoid and recover from Coltec the interest payments Crucible made to Onondaga under the Financing Lease on April 1, 2009, as a preference under section 547.  The Trustee also seeks to avoid the four interest payments totaling $508,562.50 that Crucible made under the Financing Lease from October 1, 2007, through April 1, 2009, as fraudulent transfers under section 548.  In addition, the Trustee seeks to recover from Coltec the sales proceeds that the Court ordered Crucible to pay Onondaga to satisfy the Bonds as an unauthorized post-petition transfer pursuant to section 549.

1.    Preferential Transfer

The Trustee asserts that Crucible made the April 2009 payment for the benefit of Coltec because the payment extinguished Coltec's obligation to pay Onondaga.  See, e.g., Shapiro v. Art Leather, Inc. (In re Connolly N. Am., LLC), 340 B.R. 829, 838-43 (Bankr. E.D. Mich. 2006) (holding that the initial transferee or the transfer beneficiary, or both, can be sued for avoidance under section 547(b)(1)); Menninger v. Attiyah (In re Midwest Mobile Techs., Inc.), 304 B.R. 787, 788-89 (Bankr. S.D. Ohio 2003) (holding that a guarantor of a debtor is a creditor under section 547(9)(A) and that a transfer in payment of a guaranteed debt may constitute a transfer "for the benefit

8

of" a creditor under section 547(b)(1)); Gordon v. Sturm (In re
M2Direct, Inc.), 282 B.R. 60, 63 (Bankr. N.D. Ga. 2002) (holding
that a transfer from a debtor to an outside lender that benefits
an insider guarantor is a preference if it is made within one
year before bankruptcy).  Further, the Trustee asserts that the
transfer was on account of an antecedent debt and that Crucible
was insolvent at the time.

Coltec concedes that the payment to Onondaga extinguished
Coltec's obligation to make the payment under the Assignment and
that such transfer did benefit it.  However, Coltec contends that
the Trustee's preference claim fails as a matter of law because
the payment was consistent with Crucible's payment practice under
the Financing Lease for nearly twenty-five years and, therefore,
qualifies as a payment made in the ordinary course of business.
See 11 U.S.C. § 547(c)(2).

The Trustee responds that affirmative defenses cannot be
considered in the context of a motion to dismiss.  See, e.g.,
Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 242
(3d Cir. 2005) (holding that affirmative defenses generally do
not form the basis for dismissal under Rule 12(b)(6)).  Where the
affirmative defense is an "ordinary course of business" defense,
particularly, the Trustee argues that there are many questions of
fact that cannot be properly resolved by merely consulting the
Complaint.  See, e.g., Buckley v. Merrill Lynch & Co., Inc. (In

9

re DVI, Inc.), Adv. No. 08-50248, 2008 WL 4239120, at *7 (Bankr.
D. Del. Sept. 16, 2008) (holding that ordinary course of business
defense is not a proper basis for a motion to dismiss); Adelphia
Commc'ns Corp. v. Bank of Am., N.A. (In re Adelphia Commc'ns
Corp.), 365 B.R. 24, 79 (Bankr. S.D.N.Y. 2007) (holding that the
ordinary course of business defense raises factual issues not
appropriate at the motion to dismiss stage).

     The Trustee's argument, however, is not always correct.
When an affirmative defense appears on the face of the complaint
and presents an "insuperable barrier to recovery by the
plaintiff," the court may dismiss the count. Cont'l Collieries
v. Shober, 130 F.2d 631, 635-36 (3d Cir. 1942).

     In order to create an "insuperable barrier to recovery,"
Coltec must establish that the face of the complaint satisfies
all of the elements of the section 547(c)(2) defense. See, e.g.,
J.P. Fyfe of Fla. v. Bradco Supply Corp., 891 F.2d 66, 69 (3d
Cir. 1989), Burtch v. Revchem Composites, Inc. (In re Sierra
Concrete Design, Inc.), 463 B.R. 302, 306 (Bankr. Del. 2012).
In addressing the elements of section 547(c)(2), the Court should
consider "whether the payments to a creditor made in the 90 days
preceding a filing for bankruptcy were in response to a zealous
creditor's attempt to collect on a debt through preferential
treatment ahead of other creditors, or an attempt by the debtor
to maintain normal business practices in hope of staving off

bankruptcy." <u>Troisio v. E.B. Eddy Forest Prods. (In re Global Tissue L.L.C.)</u>, 106 Fed. App'x. 99, 102 (3d Cir. 2004).

Additional factors to consider include:

> the length of the parties' relationship, the number of transactions that occurred prior to the preference, the method of payment, the timing of payment, and the behavior relating to payment, i.e., did the creditor have to make dunning calls or otherwise push the debtor to make its payments.

<u>Sierra</u>, 463 B.R. at 306.

In the case at bar, Coltec asserts that the ordinary course of business defense is established because the pattern of payment of the Bonds did not deviate from the payment pattern before or during the preference period. <u>See, e.g.</u>, <u>Warren v. Soc'y Corp. (In re Perks)</u>, 134 B.R. 627, 632 (Bankr. S.D. Ohio 1991). Coltec contends that Crucible made 47 timely payments (including the April 2009 payment) for nearly twenty-five years in accordance with the terms of the Financing Lease. <u>See, e.g.</u>, <u>Union Bank v. Wolas (In re Wolas)</u>, 502 U.S. 151, 162 (1991) (holding that the ordinary course of business defense applies to payments on long-term debt).

The Trustee contends that it is unclear from the face of the Complaint whether Crucible actually made payments pursuant to the Financing Lease for twenty-five years. The Trustee argues that the ordinary course of business defense is a factually intensive determination and should not be considered at the motion to dismiss stage where "questions of fact . . . are not properly

11

resolved." <u>DVI</u>, 2008 WL 4239120, at *3 (quoting <u>Astropower</u>

<u>Liquidating Tr. v. Xantrex Tech., Inc. (In re Astropower, Inc.)</u>,

335 B.R. 309, 334 (Bankr. D. Del. 2005)).

The Court disagrees. The Trustee's Complaint states that

Crucible made payments pursuant to the Financing Lease's

amortization schedule from the time it executed the Assignment in

1985 until the April 1, 2009 payment. (Adv. D.I. 1 at ¶ 49.)

Thus, the allegations of the Complaint itself are sufficient to

establish that Crucible was making periodic payments to Onondaga

and that the April 1, 2009, payment was made in the ordinary

course of business. Therefore, the Court concludes that the

Trustee's preference claim fails as a matter of law, and it will

be dismissed.

> 2. <u>Fraudulent Transfers</u>

The Trustee asserts that the payments Crucible made to

Onondaga under the Financing Lease for the two years before

bankruptcy were constructively fraudulent pursuant to section

548(a)(1)(B). A claim of constructive fraud "need not allege the

common variety of deceit, misrepresentation or fraud in the

inducement . . . . because the transaction is presumptively

fraudulent and all that need be alleged is that the conveyance

was made without fair consideration" while the debtor was

insolvent. <u>Astropower</u>, 335 B.R. at 333.

Coltec contends that unlike section 547(b), which permits a

12

trustee to avoid transfers "to or for the benefit of a creditor," section 548 merely permits a trustee to "avoid any transfer . . . of an interest of the debtor in property."  Coltec argues that the Trustee has not alleged any transfer of an interest in Crucible's property <u>to</u> Coltec.

The Trustee responds that under the "two-transfer" theory the Debtor's payment of the Bonds had the effect of being two transfers: one directly to Onondaga and another indirectly to Coltec.  <u>See, e.g.</u>, <u>Goldberger v. Davis Jay Corregated Box Corp. (In re Mercon Indus., Inc.)</u>, 37 B.R. 549, 552 (Bankr. E.D. Pa. 1984).  In this scenario, the first transfer is from the debtor to the outside creditor in satisfaction of the underlying obligation and the second is the satisfaction of the guarantor's contingent liability.  <u>Id</u>.  Thus, the Trustee contends that he can collect the value of the fraudulent transfers from Coltec for whose benefit they were made.

The "two-transfer" theory was created by courts as a reaction to growing case law in the late 1980s and early 1990s which held that a trustee may recover from a non-insider creditor a transfer made within one year of bankruptcy, where the transfer benefitted an insider guarantor.  <u>See generally</u>, <u>Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.)</u>, 874 F.2d 1186 (7th Cir. 1989); <u>Southmark Corp. v. Southmark Pers. Storage, Inc. (In re Southmark Corp.)</u>, 993 F.2d 117 (5th Cir. 1993); <u>Ray</u>

v. City Bank & Trust Co. (In re C-L Cartage Co.), 899 F.2d 1490
(6th Cir. 1990); Manufacturers Hanover Leasing Corp. v. Lowrey
(In re Robinson Bros. Drilling, Inc.), 892 F.2d 850 (10th Cir.
1989), aff'g, Lowrey v. First Nat'l Bank of Bethany (In re
Robinson Bros v. Drilling, Inc.), 97 B.R. 77 (W.D. Okla. 1988).

In the leading case, Deprizio, the Court adopted a "literal-
reading" approach and held that section 550(a) makes no
distinction between insiders and outsiders and that recovery may
be obtained from either the initial transferee or the entity for
whose benefit the transfer was made in the one-year period for
insider preferences.  Deprizio, 874 F.2d at 1194.

In response to Deprizio, courts developed the "two-transfer"
theory to conclude that an insider's guaranty does not expose an
outside lender to the extended insider preference recovery
period.  See, e.g., Official Creditors' Comm. of Arundel Hous.
Components, Inc. (In re Arundel Hous. Components, Inc.), 126 B.R.
216, 219 (Bankr. D. Md. 1992); Block v. Texas Commerce Bank Nat'l
Ass'n (In re Midwestern Cos.), 96 B.R. 224, 225-28 (Bankr. W.D.
Mo. 1988); In re Aerco Metals, Inc., 60 B.R. 77, 82 (Bankr. N.D.
Tex. 1985).

However, every circuit court which considered the "two-
transfer" theory rejected it and allowed recovery from either the
"initial transferee" or the "entity for whose benefit" the
transfer was made for transfers within the extended period for

14

insiders.  See Suffola, 2 F.3d at 981-82, C-L Cartage, 899 F.2d
at 1494-95; Deprizio, 874 F.2d at 1195-96.  As a result, in 1994,
Congress added section 550(c) to overrule the effect of Deprizio.
See H. Rep. No. 835 at 45 (1994).[3]  Therefore, the statute now
makes clear that the applicable preference period for non-
insiders that hold guarantees by insiders is limited to 90 days
before the petition date.  Thus, the very purpose of the "two-
transfer" theory has been eliminated by the statutory amendment
and is no longer good law.

The Court, however, concludes that when one transfer has the
effect of benefitting both the creditor holding the primary
indebtedness and the guarantor who is secondarily liable, the
transfer may be constructively fraudulent as to the guarantor.
Under section 550(a)(1), the trustee can recover a transfer
avoided under section 548 from the "initial transferee," or an
"entity for whose benefit [a] transfer was made."  Danning v.
Miller (In re Bullion Reserve of N. Am.), 972 F.2d 544, 547 (9th
Cir. 1991).

The enjoyment of some indirect, unquantifiable benefit,
however, is not sufficient to establish liability under section

---

[3]  As amended, section 550(c) provides: "[i]f a transfer
made between 90 days and one year before the filing of the
petition – (1) is avoided under section 547(c) of this title; and
(2) was made for the benefit of a creditor that at the time of
such transfer was an insider; the trustee may not recover under
subsection (a) from a transferee that is not an insider."  11
U.S.C. § 550(c).

15

550(a).  See, e.g., Reily v. Kapila (In re Int'l Mgmt. Ass'n),
399 F.3d 1288, 1292-93 (11th Cir. 2005) (holding that the mere
fact that a fraudulent transfer resulted in the defendant's
complete control over the debtors' assets does not give rise to a
quantifiable benefit); Bailey v. Assil (In re Bailey), Adv. No.
SA 04-01208 ES, 2010 WL 6451891, at *6 (B.A.P. 9th Cir. 2010).

Nonetheless, courts have held that a classic example of an
"entity for whose benefit [a] transfer was made" is a guarantor
who receives a benefit but not the money.  See, e.g., Christy v.
Alexander & Alexander of N.Y. Inc. (In re Finley, et al.), 130
F.3d 52, 57 (2d Cir. 1997) (holding that the "entity for whose
benefit" includes entities that benefit as guarantors of the
debtor without receiving the funds); Bonded Fin. Servs. Inc., v.
European Am. Bank (In re Bonded Fin. Servs., Inc.), 838 F.2d 890,
895 (7th Cir. 1988) (holding that a guarantor generally falls
into the paradigm of an "entity for whose benefit such transfer
was made").

In the case at bar, the Complaint alleges that the payments
made by Crucible to Onondaga benefitted Coltec because they
extinguished Coltec's liability to Onondaga.  This is sufficient
under section 550.

### a.    Insolvency

Coltec also asserts that the Trustee's claim under section
548(a)(1)(B) fails because the Trustee has not alleged facts to

support his legal conclusion that Crucible was insolvent when it made the payments.  Coltec asserts that the Trustee simply restated the statutory insolvency elements instead of pleading actual facts to support his contention that Crucible was insolvent at the time the payments were made.  <u>See, e.g.</u>, <u>Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)</u>, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (holding that a claim for the avoidance of a transfer under section 548 is insufficient when it "simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)").  In <u>Global Link</u>, the only facts presented by the plaintiff were lists of transfers, without comment on the debtor's financial situation at the time of the transfers or what value was received in exchange for the transfers to the defendant.  <u>Id</u>.

Similarly, the Trustee in the case at bar only provides a near verbatim recitation of the elements of section 548 without stating any underlying facts to support the conclusion that the payments were made while Crucible was insolvent.  Therefore, the Court concludes that the Trustee has failed to plead with particularity that Crucible was insolvent during the period in which the payments were made as required by Rules 8(a) and 9(b).

> b.   <u>Reasonably Equivalent Value</u>

Coltec also argues that the Trustee fails to state a claim under section 548(a)(1)(B) because payments made on account of an

17

antecedent debt are by definition a transfer in exchange for
reasonably equivalent value.  <u>See</u>, 11 U.S.C. § 548(d)(2)(A)
(defining "value" as "property, or satisfaction or securing a
present or antecedent debt of the debtor . . . .").

The Court agrees with Coltec.  When the transfer to a
creditor is in dollar-for-dollar satisfaction of an antecedent
debt, there can be no claim for constructive fraudulent transfer.
<u>See, e.g.</u>, <u>Atlanta Shipping Corp. v. Chem. Bank</u>, 818 F.2d 240,
249 (2d Cir. 1987) (holding that the repayment of an antecedent
debt constitutes fair consideration unless the transferee is an
insider); <u>Walker v. Sonafir Pasteur (In re Aphton Corp.)</u>, 423
B.R. 76, 89 (Bankr. D. Del. 2010) (holding that when a transfer
is made to pay an antecedent debt, the transfer is not
constructively fraudulent); <u>Pardo v. Gonzaba (In re APF Co.)</u>, 308
B.R. 183, 187 (Bankr. D. Del. 2004) (holding that payments made
to reduce antecedent debt are made for value and therefore not
avoidable under the constructive fraud theory of section 548).
This is because the goal of fraudulent transfer law is the
preservation of the estate against diminution and a payment which
reduces a debt dollar-for-dollar does not diminish the estate.

In this case, the antecedent debt arose from the 1985
Purchase Agreement in which the Financing Lease was assigned to
Crucible.  Thus, it is clear that the payments were made in
exchange for reasonably equivalent value because they were made

18

to pay an obligation assumed by Crucible under the 1985 Purchase Agreement and Assignment.[4]  Accordingly, the Court concludes that the Trustee's section 548 claim fails as a matter of law, and it will be dismissed.

### 3.   Post-Petition Transfer

The Trustee contends that the payment to Onondaga of the balance on the Bonds from the sale proceeds constituted an unauthorized post-petition transfer pursuant to section 549 because it involved an indirect post-petition transfer to Coltec on account of a pre-petition obligation.

Section 549 permits a trustee to avoid a post-petition transfer of property of the estate that is not authorized by the Bankruptcy Code or by the Court.  To state a claim under section 549, the Trustee must plead facts to demonstrate "(1) that property of the estate (2) was transferred (3) after the filing of a petition and that such transfer (4) was not authorized by the Code or the Court."  Pardo v. Nylcare Health Plans, Inc. (In re APF Co.), 274 B.R. 408, 418 (Bankr. D. Del. 2001).  See also Fed. R. Bankr. P. 6001.  Once a court finds a transfer avoidable, section 550(a)(1) allows the trustee to recover the property transferred from the "initial transferee," or an "entity for

---

[4]   The Trustee does not contend that the 1985 Purchase Agreement and Assignment were fraudulent or that Crucible received less than reasonably equivalent value for its assumption of obligations thereunder.

whose benefit [the] transfer was made."  11 U.S.C. § 550(a)(1).

Coltec asserts that the payment of the bonds was not an unauthorized transfer of any property of Crucible's estate because it was expressly authorized by the Court's Sale Order.  A trustee may only avoid a transfer of property of the estate "that is not authorized . . . by the court."  11 U.S.C. § 549(a)(2)(B).

The Court agrees with Coltec.  The Sale Order entered by the Court on October 21, 2009, explicitly required part of the proceeds of the sale to be paid to Onondaga to satisfy Crucible's obligation under the Bonds.  (D.I. 438.)  Crucible's estate received value under the Sale Order because the payment of the Bonds was necessary to permit the sale of the estate's property free of those encumbrances.  Simply because Coltec received an incidental "benefit" as a result does not make it an unauthorized transfer.

Further, the time for reconsideration of this Court's Sale Order has expired.  No one sought relief from the Sale Order pursuant to Rule 60(b) or by appeal.[5]  Now, more than two years later, the Trustee seeks to recover the value of the payments authorized by the Sale Order.  The Trustee's section 549 claim fails as a matter of law, and it will be dismissed.  Accordingly,

---

[5]  Although the creditors' committee filed a motion to amend the Sale Order on other grounds (D.I. 483), the committee withdrew that motion on October 23, 2009.  (D.I. 512.)

the Court will dismiss Counts III though VII of the Complaint.[6]

C.   CERCLA Claims

The Trustee alleges that Coltec is liable under section 107 of CERCLA for response costs incurred by Crucible to the EPA, NYSDEC, and Honeywell as a result of Crucible's settlement of their claims.  The Trustee also argues that Crucible is entitled to contribution from Coltec under section 113(f) of CERCLA. Coltec does not dispute the claim for contribution under section 113(f) in the Motion to Dismiss.  Coltec, however, maintains that the Trustee cannot recover under section 107 because Crucible did not incur any cleanup costs of its own but rather only reimbursed others for the cleanup costs they incurred.

Sections 107 and 113 of CERCLA provide two "complementary yet distinct" remedies by which private parties may recover expenses associated with cleaning up contaminated sites.  United States v. Atlantic Research Corp., 551 U.S. 128, 128 (2007). While section 107 provides the right to cost recovery, section 113 provides the right to contribution.  Id. at 138 (quoting Cooper Indus., Inc. v. Availl Servs., Inc., 543 U.S. 157, 163 (2004)).  Under section 107, a potentially responsible party may

---

[6]  Because the Trustee's avoidance claims all fail as a matter of law, the related claims to recover the value of the transfers at issue under section 550(a) are likewise barred. Moreover, the Trustee's claim to disallow Coltec's claims under section 502(d) and (j) also must fail, because there is no transfer for which Coltec is liable under sections 547, 548 or 549.

recover "only the costs it has 'incurred' in cleaning up a site."
Atlantic Research, 551 U.S. at 139 (quoting 42 U.S.C. §
9607(a)(4)(B)).  Satisfying a settlement agreement or court
judgment that reimburses other parties for the costs those
parties incurred cleaning up the site are not considered costs
"incurred" in cleaning up the site.  Id.  Therefore, those who
only reimburse costs incurred by others to clean a contaminated
site cannot recover under section 107.  Id.

On the other hand, section 113 does provide a means to
recover payments made to others under a settlement agreement or
court judgment.  Id.  To recover under section 113, the plaintiff
must seek contribution for a liability stemming from a suit
instituted against it under sections 106 and 107 of CERCLA.  Id.
The complementary provisions of CERCLA provide remedies "to
persons in different procedural circumstances."  Atlantic
Research, 551 U.S. at 139.

The Supreme Court in Atlantic Research was clear that claims
under sections 107 and 113 are "clearly distinct remedies" and
that "a choice of remedies simply does not exist"  Id.  See,
e.g., Solutia, Inc. v. McWane, Inc., 672 F.3d 1230, 1235-37 (11th
Cir. 2012) (holding that where the party does have a claim under
section 113, it cannot bring a claim pursuant to section 107).

The Third Circuit, however, has upheld a section 107 claim
for payments made pursuant to a settlement agreement where the

22

plaintiff contributed to a trust with others pursuant to a consent degree to fund "on-going" cleanup. Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 225-27 (3d Cir. 2010). The Court distinguished this section 107 claim in two important ways.  First, the Third Circuit found that the plaintiffs "incurred" the costs because the plaintiffs' money was added to that of other potentially responsible parties to pay directly the costs of the cleanup as it was performed. Id. Second, the plaintiff was not able to recover for contribution under section 113 because the plaintiff had not been sued by the EPA pursuant to either section 106 or 107. Id. at 225-26 (citing Cooper Indus., 543 U.S. at 168). Therefore, section 107 was the only means by which the plaintiff could recover its costs and based on these equitable considerations, the Third Circuit allowed the plaintiffs to recover under section 107(a). Id. at 225-227.

Relying on Agere, the Trustee asserts that it can, in fact, recover from Coltec pursuant to section 107. The Trustee argues that Crucible is not merely reimbursing EPA, NYSDEC, and Honeywell for past costs they incurred but also for costs to be incurred in the future. The settlement agreements explicitly provide that Crucible's payments to EPA, NYSDEC, and Honeywell include future response costs.[7]  (D.I. 1075 & 1554.)

---

[7]  The settlement agreements satisfied the proof of claims filed by EPA, NYSDEC and Honeywell. The proof of claims filed by the parties request payment for response costs that have been

The Court agrees with the Trustee.  Similar to the facts of Agere, Crucible has not been subject to a section 107 claim because no civil action has been brought against it.  (Adv. D.I. 1.)  Moreover, the Complaint alleges facts sufficient to prove that Crucible "incurred" costs as part of the settlement to fund "on-going" cleanup.  Therefore, the general rule that payments satisfying a settlement agreement are not deemed "costs incurred" does not apply here.  Accordingly, Coltec's Motion to Dismiss Count II – as it applies to claims under section 107 – will be denied.

IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Coltec's Motion to Dismiss will be granted with respect to Counts III through VII and that the Motion to Dismiss will be denied with respect to Count II.

An appropriate order is attached.

Dated: October 31, 2012                 BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge

---

incurred or that will be incurred.  (Adv. D.I. 10 at Ex. 5,6, & 7.)